# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST PEREZ, | ) 1:11cv0308 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## BACKGROUND

Plaintiff Ernest Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

On January 17, 2008, Plaintiff filed an application for SSI.  AR 132-38.  He alleged disability since January 4, 2008, due to nervousness, depression, talking to self, and pains in heart.  AR 153.  After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 84-87, 91-95, 97-98.  On March 3, 2010, ALJ

---

[1] References to the Administrative Record will be designated "AR," followed by the relevant page number.

1    Patricia Leary Flierl held a hearing.  AR 23-54.  ALJ Flierl denied benefits on March 23, 2010.

2    AR 7-17.  The Appeals Council denied Plaintiff's request for review on January 3, 2011.  AR 1-

3    3.

4            Hearing Testimony

5            ALJ Flierl held a hearing on March 3, 2010, in Fresno, California.  AR 23.  Plaintiff

6    appeared with his attorney, Melissa Proudian.  Vocational expert Jose Chaparro also appeared

7    and testified.  AR 25.

8            Plaintiff was born in 1961 and finished the tenth grade.  He has never worked and has

9    never lived on his own. He claimed that he could not work at a job eight hours a day, five days

10   week because he "can't think right."  AR 26-28.

11           Plaintiff testified to problems with depression.  He cries for no reason about five days a

12   week.  AR 28-29.  He gets sad about his dad, who died after falling down the stairs.  Because of

13   his depression, he can't think right and he can't comprehend.  AR 29-30.  He can watch TV for

14   two to three hours without taking a break, but can only look at a book for 10-15 minutes and pay

15   attention for 5 minutes.  It is hard for him to understand things.  AR 30-31.

16           Plaintiff also testified to problems sleeping and hearing voices five days a week.  He

17   takes Seroquel, which calms him down and helps him sleep.  During the day, he watches TV for

18   about three hours.  For the rest of the day, he visits family and friends outside the house.  AR 32-

19   34.

20           Plaintiff does not have suicidal thoughts.  When depressed, he can't eat and he cries about

21   three or four times a week.  It helps to talk to somebody.  AR 35.

22           Plaintiff testified that he sees Dr. Collado at Mental Health every two months for

23   medication.  He tells Dr. Collado that he is still hearing voices and is still paranoid.  He feels like

24   people are following him six to seven times a month.  He doesn't know what triggers it.  He

25   takes medication, but still feels like that.  AR 36-37.

26           Plaintiff testified that he dresses himself and takes showers, but doesn't make himself

27   anything to eat.  He is never by himself as he would be scared because of the voices.  AR 37-38.

28

                                                    2

1    Plaintiff reported that he last had alcohol two years before the hearing.  He did not know

2 why someone at Mental Health said he was drinking.  He is a borderline diabetic and has

3 glucose.  Two years ago, he was not drinking on a regular basis.  He was never a heavy drinker.

4 AR 38-39.

5    Plaintiff also stated that he has problems crossing at the cross light because he feels that

6 everybody's looking at him.  He also has family or friends go with him to the store.  He can't be

7 around a lot of people because it feels uncomfortable.  If there is a long line at the store, he will

8 go outside and wait.  He also doesn't like to pick up the phone or open letters.  AR 39-40.

9    Plaintiff testified that he was in prison four times for selling heroin, but he didn't think he

10 was using heroin.  Plaintiff explained that he sold heroin because he couldn't hold or handle a

11 job, but he also never applied for a job and never worked.  Plaintiff would have friends pick up

12 and sell the heroin.  He was the "middleman."  His friends never got arrested.  AR 42-43.

13    Plaintiff testified that he used crank in the 90s.  He last used it in 1996.  He started selling

14 heroin in 1986.  He last sold it in 2005.  He is not using drugs anymore.  AR 45-46.

15    When asked if he had physical problems, Plaintiff testified that he was in a car accident

16 when he was 10 and he has a scar on his head.  He believes the car accident is the cause of the

17 paranoia and the voices.  Plaintiff started hearing voices about eight years ago, when he was age

18 40.  He didn't hear voices in his 20s and he was selling heroin at age 25.  AR 49-51.

19    For the first hypothetical, the ALJ asked the VE to assume an individual with no

20 exertional limitations who is limited to simple and repetitive tasks and no interaction with the

21 public.  The VE testified that there would be jobs available at the unskilled, heavy, medium, light

22 and sedentary levels, which were consistent with the DOT.  AR 52-53.

23    For the second hypothetical, the ALJ asked the VE to assume an individual with a fair

24 ability to carry out one-to-two-step job instructions, a poor ability to relate appropriately to

25 supervisors and coworkers, a poor ability to deal with the public, a poor ability to maintain

26 concentration and attention in two-hour increments and a poor ability to withstand the stress and

27 pressure of a workday.  The VE testified that there were no jobs for this individual.  AR 53.

28

<u>Medical Record</u>[2]

On November 29, 2006, while in the custody of the California Department of Corrections ("CDC"), Plaintiff was diagnosed with depression.  AR 233.

On February 1, 2007, Plaintiff reported anxiety and an auditory hallucination.  On exam, Plaintiff was anxious with a constricted affect.  The CDC psychiatrist prescribed Vistoril. Plaintiff was to continue with Abilify and Prozac.  AR 232.

On February 28, 2007, Plaintiff told the prison psychiatrist that his anxiety was good.  He reported having auditory hallucinations very rarely, which were noted to be "questionable."  He denied paranoia and delusions.  He was to continue medications.  AR 231.

On March 2, 2007, Plaintiff told the CDC psychologist that medications were helping his depression and he no longer had anxiety.  The psychologist noted brief, intermittent auditory hallucinations that did "not significantly impact his functioning."  AR 230.

On May 29, 2007, the CDC psychologist noted that Plaintiff's hallucinations continued, but the voices did not "bother homicidal ideation that much," and he only felt paranoid one time since being imprisoned.  His condition was stable.  AR 228.

On June 28, 2007, Plaintiff told the CDC psychiatrist that he was doing well.  He denied depression, anxiety and anger, but reported occasional auditory hallucinations.  AR 229.

On August 8, 2007, Hugh G. Jones, LCSW, conducted an initial mental evaluation for the Parole Outpatient Clinic ("POC") following Plaintiff's discharge from custody on June 28, 2007. AR 246.  On mental status examination, Plaintiff's affect was congruent, his mood euthymic, there were no signs of any auditory or visual hallucinations and his memory and cognitive functioning "seemed to be fairly intact."  AR 247.  However, Plaintiff's judgment and insight appeared to be moderate to severely impaired based on his lengthy substance abuse history and legal problems.  He was oriented in all spheres and his thought processes were clear and intact. Mr. Jones diagnosed Plaintiff with a substance-induced mood disorder, polysubstance dependence and an antisocial personality disorder.  Mr. Jones assigned Plaintiff a Global

[2]Plaintiff's arguments are limited to his mental impairment(s).  Accordingly, the medical record summary is limited primarily to Plaintiff's mental health.

1   Assessment of Functioning ("GAF") of 70.  Mr. Jones further noted that Plaintiff had not

2   continued on any psychiatric medication and he did not appear to need any further POC services.

3   AR 247.

4         On March 6, 2008, Dr. Rustom F. Damania completed a consultative internal medicine

5   evaluation.  Following a physical examination, Dr. Damania diagnosed Plaintiff with moderate

6   obesity, questionable high blood sugar with a questionable history of diabetes mellitus, and a

7   history of alcohol and substance abuse.  Dr. Damania found "no major objective evidence" for a

8   "gross physical impairment."  AR 248-51.

9         On April 4, 2008, Dr. Steven C. Swanson, a licensed clinical psychologist, completed a

10  consultative psychological assessment.  AR 255-60.  During the assessment, Plaintiff was fully

11  oriented to person, time, place and situation.  Although his attitude was friendly, "he appeared

12  intentionally to perform poorly on the psychometrics."  He exhibited a constricted range of affect

13  and his mood was euthymic.  There was no evidence of delusional material or a disorder of

14  perception.  Vegetative signs of depression were absent.  Dr. Swanson indicted that Plaintiff's

15  short-term, recent and remote memories were all poor based upon memory of three words (with

16  and without time delay, what he had for dinner the night before, what school he attended in the

17  third grade, the names of previous U.S. presidents), but this "appeared possibly malingered."  AR

18  257-58.  Plaintiff's abstraction ability and concentration "appeared possibly malingered."  AR

19  258.  His judgment and insight, along with his general fund of knowledge, also "appeared

20  malingered."  Dr. Swanson opined that Plaintiff seemed "intentionally to perform poorly on the

21  WAIS-III," which is a widely-used measure of an adult's intellectual functioning, and he

22  "appeared intentionally to perform poorly" on the WMS-III, which assesses major dimensions of

23  memory.  AR 258.   To address concerns of malingering, Dr. Swanson administered the TOMM,

24  which is a recognition test designed to help psychologists discriminate between malingered and

25  bona fide memory impairments.  Plaintiff's score on the TOMM indicated that "he expended

26  effort to perform poorly and [was] likely to be malingering."  AR 258-59.  Additionally,

27  Plaintiff's reproductions on the Bender-Gestalt II, which is a test that measures visual-motor

28  integration skills, "were careless and invalidating."  Plaintiff also claimed to be unable to

5

1  complete the task demands of the TMT, which is a test of visual, conceptual and visuomotor

2  tracking.  AR 259.

3       Dr. Swanson diagnosed Plaintiff with polysubstance dependence/abuse in remission,

4  malingering and an antisocial personality disorder.  He assigned Plaintiff a GAF of 65.  Dr.

5  Swanson believed that Plaintiff appeared intentionally to perform poorly on the psychometrics

6  and the clinical impression of malingering was evaluated and confirmed.  Dr. Swanson

7  concluded that there was "no genuine reason to believe that [Plaintiff's] mental or emotional

8  functioning falls outside normal limits."  AR 260.  Dr. Swanson opined that Plaintiff was able to

9  maintain concentration or relate appropriately to others in a job setting.  He would be able to

10  handle funds in his own best interests.  He was expected to understand, carry out, and remember

11  simple instructions and was judged as able to respond appropriately to usual work situations,

12  such as attendance, safety and the like.  Changes in routine would not be very problematic for

13  him and there did not appear to be substantial restrictions in daily activities.  AR 260.

14       On April 14, 2008, Dr. Evangeline A. Murillo, a state agency medical consultant,

15  completed a Mental Residual Functional Capacity Assessment form.  Dr. Murillo opined that

16  Plaintiff had moderate limitations in the ability to understand, remember and carry out detailed

17  instructions.  He could sustain simple and repetitive tasks with adequate pace, could interact with

18  co-workers and supervisors, could adapt to work changes and could relate with supervisors and

19  others.  AR 262-64.

20       On the same date, Dr. Murillo completed a Psychiatric Review Technique form.  She

21  opined that Plaintiff had the mental impairments of an antisocial personality disorder and

22  polysubstance abuse/dependence with only mild functional limitations.  There was insufficient

23  evidence of any decompensation.  AR 265-75.

24       On June 13, 2008, Plaintiff underwent a Disability Examination at Community Medical

25  Center.  Plaintiff's examination findings were normal, including his mental status.  The physician

26  opined that Plaintiff could work full-time/part-time with limited interaction with the public.  AR

27  317.  On July 18, 2008, Plaintiff underwent another Disability Examination at Community

28  Medical Center.  The provider opined that Plaintiff could participate in full-time/part-time

1   restricted work with limitations to no more than 4th grade reading, writing, and/or mathematical

2   skills and no driving, work-requiring climbing ladders, or use of powered equipment.  AR 316.

3          On July 30, 2008, Jim Bowman, LCSW at Fresno County Mental Health, completed an

4   Adult Comprehensive Assessment.  Plaintiff complained of hearing voices and seeing shadows

5   on the walls.   On mental status exam, Plaintiff had a poverty of ideas and his thought content

6   was impoverished and shallow.  He was paranoid and reported both auditory and visual

7   hallucinations.  His mood was worried, depressed and dysphoric.  His affect was congruent, flat

8   and restricted/limited.  His immediate recall was impaired and his recent memory was poor.

9   Additionally, his interpretation, insight, calculations and general fund of information were poor.

10   Mr. Bowman diagnosed major depression, recurrent, with psychotic features and assigned a GAF

11   of 30.  AR 302-06.  Mr. Bowman developed a Plan of Care to include follow up with the Sequoia

12   Clinic for interim medication support services.  AR 307.

13          On August 15, 2008, Plaintiff began treatment at Fresno County Mental Health.  AR 284.

14   He was diagnosed with major depressive disorder recurrent with psychotic features.  AR 301.

15          On September 20, 2008, Plaintiff sought treatment at Sequoia Community Behavioral

16   Health.  He reported a high level of irritability and depression.  AR 280.

17          On October 7, 2008, Plaintiff again sought treatment at Sequoia Community Behavioral

18   Health.  He reported doing about the same.  The provider, a licensed social worker, indicated that

19   Plaintiff's attitude was guarded and suspicious.  His mood was dysphoric, his affect flat and his

20   memory impaired.  He also had poor concentration and insight.  The provider diagnosed a

21   depressive disorder.  AR 279.

22          On January 9, 2009, Plaintiff received individual therapy at Fresno County Mental

23   Health.  Between January 15 and May 14, 2009, he attended group therapy four times.  AR 291-

24   95.

25          On January 28, 2009, Dr. Collado developed a plan of care for Plaintiff that included

26   psychotropic medication and periodic face-to-face meetings.  AR 289.

27          On March 24, 2009, Plaintiff reported auditory and visual hallucinations, along with

28   nightmares, depression, anxiety and, at times, paranoia.  He also reported difficulty relating with

7

people.  On mental status exam, his mood was depressed, his affective range blunted and his intelligence average.  His thought content included hallucinations, phobias and ideas of reference.  Dr. Collado diagnosed major depressive disorder with psychosis.  AR 287.

On June 16, 2009, Plaintiff reported to Dr. Collado that he had ongoing auditory hallucinations, anxiety and depression, which were milder with medications.  On mental status exam, Plaintiff's mood was anxious, his affective range blunted and his intelligence below average.  His response to medication was improved.  AR 286.

On August 18, 2009, Plaintiff saw Dr. Collado and reported doing better with medications.  However, he had the "same old problems" with anxiety and depressed feelings.  He still had auditory hallucinations, but they were described as "milder."  AR 285.

On August 18, 2009, Shirley Keith, LCSW at Fresno County Mental Health, developed a POC for Plaintiff.  According to the plan, Plaintiff complained of depression, voices 4-5 times a week and seeing things 1-2 times a month.  Ms. Keith commented that Plaintiff had a history of being locked up and was used to having his needs taken care of by others.  He would get "annoyed with others" if the they expected him to cook and clean or if they wanted to talk with him when he was tired.  Ms. Keith also noted that Plaintiff "would prefer a different case manager who does not believe that [Plaintiff] can possibly work in the future."  AR 283.

On January 20, 2010, Dr. Collado completed a Medical Source Statement - Psychiatric/Psychological form.  She opined that Plaintiff had a poor ability to relate and interact with supervisors and co-workers, a poor ability to understand, remember and carry out technical and/or complex job instructions, a fair ability to understand, remember and carry out simple one-or-two step job instructions, a poor ability to deal with the public, and a poor ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity.  Dr. Collado further opined that Plaintiff's prognosis was fair with treatment and he had a fair response to medication.  AR 311-12.

ALJ's Findings

The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 17, 2008.  He had the severe impairments of major depressive disorder with psychotic features,

anti-social personality disorder and a history of substance abuse.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with a nonexertional limitation to simple, repetitive tasks with no interaction with the public.  With this RFC, Plaintiff could perform jobs existing in the national economy.  AR 12-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

1  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

2  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

3  Cir. 1990).

4       In an effort to achieve uniformity of decisions, the Commissioner has promulgated

5  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

6  C.F.R. §§ 416.920 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1)

7  had not engaged in substantial gainful activity since his application; (2) has an impairment or a

8  combination of impairments that is considered "severe" (major depressive disorder with

9  psychotic features, anti-social personality disorder and a history of substance abuse) based on the

10  requirements in the Regulations (20 C.F.R. § 416.920(c)); (3) does not have an impairment or

11  combination of impairments which meets or equals one of the impairments set forth in Appendix

12  1, Subpart P, Regulations No. 4; (4) does not have past relevant work; but (5) could perform jobs

13  existing in significant numbers in the national economy.  AR 12-16.

14       Here, Plaintiff contends that the ALJ erred in the disability evaluation by (1) rejecting the

15  opinion of Plaintiff's treating physician, Dr. Collado; and (2) rejecting Plaintiff's credibility.

16  **DISCUSSION**

17  A.    <u>Treating Physician Opinion</u>

18       Plaintiff contends that the ALJ failed to provide sufficient rationale for rejecting the

19  opinion of his treating physician, Dr. Collado.  The Court disagrees.

20       The ALJ may disregard the treating physician's opinion by setting forth specific,

21  legitimate reasons for doing so that are based on substantial evidence. *See Magallanes v. Bowen,*

22  *881 F.2d 747, 751 (9th Cir.1989).* "The ALJ can meet this burden by setting out a detailed and

23  thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

24  and making findings." *Id.* (citation omitted).  Here, the ALJ offered a detailed summary of

25  Plaintiff's medical records, including the clinical findings of other treating and examining

26  physicians.  AR 13-14.  The ALJ then provided specific reasons for rejecting Dr. Collado's

27  opinion that Plaintiff had a fair to poor ability to function in all areas.  AR 14-15.

28

First, the ALJ found that Dr. Collado's opinion was inconsistent with the overall medical evidence of record.  AR 15.  In so finding, the ALJ relied on the conflicting opinion of a treating physician who opined that Plaintiff could work full-time with limited public interaction.  AR 14, 317.  The ALJ also relied on the conflicting opinion of the consultative examiner, Dr. Collado, and the non-examining state agency physicians.  AR 14-15.  An ALJ may properly reject a treating physician's opinion that is inconsistent with the record as a whole.  *Batson v. Comm'r of Soc. Sec.,* 359 F.3d 1190, 1195 (9th Cir. 2004); *McCoy v. Astrue,* 2009 WL 1657445, *8 (C.D. Cal. Jun. 12, 2009)* (ALJ provided specific and legitimate reasons for giving less weight to treating physician opinion that was unsupported by the record as a whole).  Plaintiff attempts to argue that Dr. Collado's opinion was consistent with the overall record.  However, Dr. Collado was the only physician to opine that Plaintiff had functional limitations that prevented him from working.  AR 311-12.  No other examining or treating physician found Plaintiff to have such limited functioning.  AR 230, 255-60, 265-75, 316-17.

The ALJ also found Dr. Collado's functional assessment form to be conclusory and lacking any supporting bases.  AR 15.  Dr. Collado's form did not provide any explanation or clinical findings to support the identified functional limitations.  AR 311-12.  An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.  *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002); *Magallenes,* 881 F.2d at 751 (a brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion).

The ALJ also rejected Dr. Collado's opinion in favor of the more extensive, well-supported opinion of the consultative examiner, Dr. Swanson.  The contrary opinion of an examining source constitutes a "specific and legitimate reason" for rejecting opinion of a treating source.  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).  Indeed, an ALJ may reject a treating source's opinion in favor of an examining source's opinion that is based on "independent clinical finding that differ from those of the treating physician."  *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is

1  contradicted, and the opinion of a nontreating source is based on independent clinical findings

2  that differ from those of the treating physician, the opinion of the nontreating source may itself be

3  substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").  In this

4  case, Dr. Swanson performed an independent examination of Plaintiff and conducted a number

5  of tests to ascertain his functioning.  Based on this evaluation and testing, Dr. Swanson found

6  "no genuine reason to believe that [Plaintiff's] mental or emotional functioning falls outside

7  normal limits."  AR 260.  Although Plaintiff attempts to argue that Dr. Swanson's opinion is

8  unsubstantiated, this argument lacks merit.  Dr. Swanson examined Plaintiff, administered

9  numerous psychometric tests, and confirmed Plaintiff's malingering with the TOMM test.  AR

10  255-60.  There is no basis to conclude that Dr. Swanson's findings were unsupported.

11       Based on the foregoing, the ALJ provided specific and legitimate reasons for assigning

12  less weight to Dr. Collado's opinion.

13  B.   Plaintiff's Credibility

14       Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting his

15  credibility.  An ALJ may reject a claimant's testimony based on credibility, but must do so with

16  specific findings supporting the conclusion. *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th

17  Cir.1991). Where, as here, there is "affirmative evidence suggesting ... malingering" in the

18  record, the ALJ's reasons for rejecting the claimant's testimony need not reach the clear and

19  convincing standard. *Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir.1996); *Carmickle v.

20  Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1160 (9th Cir.2008); *Lester v. Chater*, 81 F.3d 821,

21  834 (9th Cir.1995) (citations omitted).  In this case, the ALJ made specific findings to conclude

22  that Plaintiff's statements concerning the intensity, persistence and limiting effects of his

23  symptoms were not credible.

24       First, the ALJ gave little weight to Plaintiff's testimony because of inconsistencies in his

25  statements. *See Smolen*, 80 F.3d at 1284 (ALJ may consider ordinary techniques of credibility

26  evaluation, such as prior inconsistent statements and other testimony that appears less than

27  candid); Soc. Sec. Ruling ("SSR") 96-7p.  For example, the ALJ contrasted Plaintiff's testimony

28  that he washes his clothes, but does not cook or do any other chores, with Plaintiff's report to Dr.

Swanson that he can independently take care of all of his activities of daily living.  AR15, 26-27, 257.  The ALJ also contrasted Plaintiff's testimony that he cannot work due to his depression and because he cannot think right with his ability to watch television for 2-3 hours without a break.  AR 15, 28, 30.  Plaintiff also testified that he had problems sleeping, heard voices, and experienced paranoia, but he denied hallucinations to Dr. Swanson, and on the date of his last mental health treatment, he reported normal sleep and doing better with medication.  AR 15, 33-34.  The ALJ additionally noted that Plaintiff submitted a function report claiming he does no activities of daily living and just stays in his room all day, but testified to the contrary that during the day he visits with family and friends.  AR 15, 34.

Next, the ALJ discounted Plaintiff's credibility based on a diagnosis of malingering.  AR 14.  An ALJ may properly reject a claimant's testimony upon finding evidence of malingering.  *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *Lee v. Astrue*, 2011 WL 4502038, *2 (C.D. Cal. Sept. 29, 2011) (noting that an ALJ can reject a plaintiff's subjective complaints upon finding evidence of malingering or expressing clear and convincing reasons for doing so).  The ALJ's finding is supported by Dr. Swanson's testing and diagnosis of malingering.  AR 258-60.  In arguing that the credibility determination was flawed, Plaintiff did not refer to the affirmative evidence of malingering.  As previously noted, Plaintiff's effort to discredit Dr. Swanson's opinion was unpersuasive.

Additionally, the ALJ discounted the severity of Plaintiff's subjective complaints based on medical evidence of record reflecting that Plaintiff's symptoms improved with medication.  An ALJ's finding that symptoms improved with medication is a valid consideration in assessing a claimant's credibility.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999).  Here, Plaintiff demonstrated improved, milder symptoms with the use of medications.  AR 230, 285-86.  His treating physician also noted improvement with medications.  AR 311-12.

In sum, the ALJ's decision to reject Plaintiff's subjective complaints was based on specific findings supported by the record and was not error.

1

## CONCLUSION

2        Based on the foregoing, the Court finds that the ALJ's decision is supported by

3    substantial evidence in the record as a whole and is based on proper legal standards.

4    Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

5    Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in

6    favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff

7    Ernest Perez.

8

9        IT IS SO ORDERED.

10   **Dated:**   **November 10, 2011**              **/s/ Dennis L. Beck**
                                              UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28